IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Dallas Buyers Club, LLC, | ) |
| | ) |
| | ) Case: No. 14-cv-235 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Does 1-16, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO TAKE DISCOVERY
PRIOR TO RULE 26(f) CONFERENCE**

**I. Introduction**

This action seeks to address the infringement of Plaintiff's copyrighted MOVIE entitled "*Dallas Buyers Club*" (the "MOVIE"). The MOVIE won three Academy Award and was nominated for six. It also won numerous other awards including two Golden Globes. Two of its stars, Matthew McConaughey and Jared Leto, won Oscars for their performances in the MOVIE. (Exhibit A). After the MOVIE's winning night at the Oscars, the number of illegal downloads soared by the hundreds of thousands. (Exhibit B)

Illegally downloading mainstream movies to avoid purchasing a ticket, the DVD or a rental fee is so pervasive that the public widely accepts it without question. There are even websites devoted to illegal copying. One such website is *The Pirate Bay* where instructions on how to download the required pirating software, usually a torrent, may be obtained.[1] *The Pirate Bay* even provides a convenient "Pirate Search" tab that enables copiers to "shop" for illegal copies of games, music, movies, books and software. This illegal copying, which clearly is an intentional act

---
1 http://thepiratebay.se.

since it requires an infringer to install special software and search out movies to pirate, is the problem this lawsuit addresses.

Cloaked in the anonymity of the Internet, digital pirates banded together into swarms using file-sharing technology such as BitTorrent to illegally obtain and distribute high quality copies of the MOVIE. While each single act of infringement may appear to be slight, collectively, illegal downloading often starts even before a movie is released and costs legitimate industries millions of dollars. (Exhibit C) Not only are movies pilfered, the pirates' other prizes include TV shows, computer games, e-books, software and music. (Id.)

Thus, this suit not only represents a single copyright owner faced with the daunting task of protecting its Intellectual Property from the irreparable harm caused by over one-hundred-thousand swarming infringers, it is emblematic of the fight of the motion picture industry and any other legitimate businesses that rely on copyright protection. Denying Plaintiff the discovery needed to pursue the infringing swarm in a single action endorses and encourages the infringement. It frees the pirates to roam the Internet searching for prizes by providing shelter through the anonymity of the Internet and the high cost of individual enforcement.

Plaintiff sued each Defendant as a "Doe" because Defendants committed infringement using on-line pseudonyms ("user names" or "network names"), not their true names. Plaintiff has only been able to identify the Doe Defendants by (1) their Internet Protocol ("IP") addresses, (2) the dates and times of the infringement, (3) the hash value which identifies each Defendant as cooperatively participating in the same swarm and (4) the location of each IP address.

Defendants' actual names may only be obtained from the non-party Internet Service Providers ("ISPs") to which Defendants subscribe and from which Defendants obtain Internet access, as this information is readily available to the ISPs from documents kept in the regular course of business. Accordingly, Plaintiff seeks leave of Court to serve limited discovery prior
2

to a Rule 26(f) conference on the non-party ISPs solely to determine the true identities of the Doe Defendants. Plaintiff requests that the Court allow Plaintiff to serve Rule 45 subpoenas on the ISPs immediately and that the ISPs shall comply with the subpoenas.

If the Court grants this Motion, Plaintiff will serve subpoenas on the ISPs requesting the identifying information. The ISPs will be able to notify their subscribers that this information is being sought, and, if so notified, each Defendant will have the opportunity to raise any objections before this Court. Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

**II. Argument**

Pursuant to Rule 26(d)(1), except for circumstances not applicable here, absent a court order, a party may not propound discovery in advance of a Rule 26(f) conference. Rule 26(b) provides courts with the authority to issue such an order: "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Turner Industries Group, LLC vs. International Union of Operating Engineers, Local 450*, U.S. Dist. LEXIS 68746, at *7-*10 (S. D. Tex. 2013). In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where: (1) plaintiff makes a prima facie showing of a claim of copyright infringement, (2) plaintiff submits a specific discovery request, (3) there is an absence of alternative means to obtain the subpoenaed information, (4) there is a central need for the subpoenaed information, and (5) defendants have a minimal expectation of privacy. *See Arista Records, LLC v. Doe 3,* 604 F.3d 110 (2d Cir. 2010) (citing *Sony Music Entm't v. Does 1-40*, 326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004) (numbers added)); *Elektra Entm't Group, Inc. v. Doe*, No. 5:08-CV-115-FL, 2008 WL 5111886, at *4 (E.D.N.C. Dec. 4, 2008) (same); *Warner Bros. Records, Inc. v. Doe*, No. 5:08-CV-116-FL, 2008 WL

3

5111883, at *4 (E.D.N.C. Dec 4, 2008) (same); *BMG Music v. Doe # 4*, No. 1:08-CV-135, 2009 WL 2244108, at *3 (M.D.N.C. July 24, 2009) (same). *See also, Arista Records LLC v. Does 1-19*, 551 F.Supp.2d 1, 6-7 (D.D.C. 2008), and the cases cited therein, noting the "overwhelming" number of cases where copyright infringement plaintiffs sought to identify "Doe" defendants and courts "routinely applied" the good cause standard to permit discovery. Here, all of the good cause elements are present. Thus, this Court should grant the Motion.

      A.      **Precedent Allowing Discovery to Identify Doe Defendants**

In copyright cases brought by motion picture studios and record companies against Doe defendants, this Court and other courts have granted motions for leave to take expedited discovery to serve subpoenas on ISPs to obtain the identities of Doe Defendants prior to a Rule 26 conference. *TCYK, LLC v. Doe*, 2013 U.S. Dist. LEXIS 69463 (W.D. Wis. May 14, 2013); *Atlantic Recording Corp., et. al. v. John Does 1-48,* 08-cv-00366 (W.D. Wis. July 18, 2008) (Doc. 7); *Warner Bros. Records, Inc. v. Does 1-6,* 527 F.Supp.2d 1, 2 (D.D.C. 2007) (allowing plaintiffs to serve a Rule 45 subpoena upon Georgetown University to obtain the true identity of each Doe defendant, including each defendant's true name, current and permanent addresses and telephone numbers, email address, and Media Access Control ("MAC") address) (citing Memorandum Opinion and Order, *UMG Recordings, Inc. v. Does 1-199*, No. 04-093(CKK) (D.D.C. March 10, 2004); Order, *UMG Recordings v. Does 1-4*, 64 Fed. R. Serv. 3d (Callaghan) 305 (N.D. Cal. March 6, 2006)).

The following factors are considered when granting motions for expedited discovery to identify anonymous Internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify

4

the defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

### B. Good Cause Exists to Grant the Motion

#### 1. Plaintiff's Has a Prima Facie Claim for Copyright Infringement

##### a. Overview of Allegations and Factual Showings

The Complaint alleges that the Doe Defendants, without authorization, used an online media distribution system to cooperatively download the copyrighted MOVIE and to cooperatively distribute it to other users on the P2P network, including by making the copyrighted MOVIE for which Plaintiff holds the exclusive reproduction and distribution rights. (Compl. ¶¶ 11-18) Crystal Bay Corporation ("CBC"), a provider of online anti-piracy services for the MOVIE industry, was engaged to monitor this infringing activity. Exhibit D; Declaration of Daniel Macek ("Macek Decl.")

An IP address is a unique numerical identifier that is automatically assigned to an Internet user by the user's Internet Service Provider ("ISP"). In logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address, phone number and Media Access Control number of the user/subscriber. (Macek Decl., ¶ 17)

Only the ISP to whom a particular IP address has been assigned for use by its subscribers can correlate that IP address to a particular subscriber. From time to time, a subscriber of Internet services may be assigned different IP addresses from their ISP. Thus, to correlate a subscriber with an IP address, the ISP also needs to know when the IP address was being used. Unfortunately, many ISPs only retain for a very limited amount of time the information necessary to correlate an IP address to a particular subscriber. (Macek Decl., ¶18) To identify the

IP addresses of those BitTorrent users who were copying and distributing Plaintiff's copyrighted MOVIE, CBC was responsible for analyzing, reviewing and attesting to the results of the investigation. (Macek Decl., ¶¶ 19-22)

Forensic software provided by CBC to scan peer-to-peer networks for the presence of infringing transactions (Macek Decl., ¶23) and the IP addresses of the users responsible for copying and distributing the MOVIE were isolated. (Macek Decl., ¶24) Through each of the transactions, the computers using the IP addresses identified in Complaint Exhibit B transmitted a copy or a part of a copy of a digital media file identified by the relevant hash value. The IP addresses, hash values, dates and times contained in Complaint Exhibit B correctly reflect what is contained in the evidence logs. The subscribers using the IP addresses set forth in Complaint Exhibit B were all part of a "swarm" of users that were reproducing, distributing, displaying or performing the copyrighted work. (Macek Decl., ¶25)

Moreover, the users were sharing the exact same copy of the MOVIE. Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a "hash checksum." The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as US Secure Hash Algorithm 1 or "SHA-1", which was developed by the National Security Agency and published as a US government standard. Using a hash tag to identify different copies of the MOVIE, it was confirmed that these users reproduced the very same copy of the MOVIE. (Macek Decl., ¶26)

The CBC software analyzed each BitTorrent "piece" distributed by each IP address listed in Complaint Exhibit B and verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital copy of the MOVIE. (Macek Decl., ¶27)

The software uses a geolocation functionality to confirm that all IP addresses of the users set forth in Complaint Exhibit B are accurate. Though an IP address alone does not reveal the

name or contact information of the account holder, it does reveal the locations of the Internet line used for the transaction. IP addresses are distributed to ISPs by public, nonprofit organizations called Regional Internet Registries. These registries assign blocks of IP addresses to ISPs by geographic region. In the United States, these blocks are assigned and tracked by the American Registry of Internet Numbers. Master tables correlating the IP addresses with local regions are maintained by these organizations in a publicly-available and searchable format. An IP address' geographic location can be further narrowed by cross-referencing this information with secondary sources such as data contributed to commercial database by ISPs. (Macek Decl., ¶28).

### b. Plaintiff's Facie Showing Of Copyright Infringement

Plaintiff has sufficiently identified the Doe Defendants through the unique IP address that each Doe Defendant was assigned at the time of the unauthorized distribution and copying of the copyrighted MOVIE. These Defendants gained access to the Internet through their respective ISPs by setting up an account with the various ISPs. The ISPs can identify each Defendant by name through the IP address by reviewing its subscriber activity logs. Thus, Plaintiff can show that all Defendants are "real persons" whose names are known to the ISP and who can be sued in federal court.

A prima facie claim of copyright infringement consists of two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Plaintiff satisfied the first good cause factor by properly pleading a cause of action for copyright infringement. (Compl. at ¶¶ 11-18) *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *Elektra*

*Entm't Group, Inc. v. Doe*, No. 5:08-CV-115-FL, 2008 WL 5111886, at *4 (E.D.N.C. Dec. 4, 2008) ("[P]laintiffs have established a prima facie claim for copyright infringement, as they have sufficiently alleged both ownership of a valid copyright and encroachment upon at least one of the exclusive rights afforded by the copyright."); *Warner Bros. Records, Inc. v. Doe*, No. 5:08-CV-116-FL, 2008 WL 5111883, at *4 (E.D.N.C. Dec 4, 2008) (same). Accordingly, Plaintiff has exceeded its obligation to plead a prima facie case.

### 2. Plaintiff Seeks Limited And Specific Discovery

Plaintiff only seeks to discover the name and address of the Defendants. This is all specific information that is in the possession of the Defendant's ISP that will enable Plaintiff to advance the action. Since the requested discovery is limited and specific, Plaintiff has satisfied the second good cause factor.

### 3. No Alternative Means Exist to Obtain Defendant's True Identities

Other than receiving the information from the Defendants' ISP, there is no way to obtain Defendants' true identity because the ISP is the only party who possesses records which track IP address assignment to their subscribers. Consequently, the ISP is the source for information relating to associating an IP address to a real person. Since there is no other way for Plaintiff to obtain Defendant's identity, except by serving a subpoena on Defendant's ISPs demanding it, Plaintiff has established the third good cause factor. *See Columbia Ins. Co. v. Seescandy et al.*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999); *Elektra Entm't Group, Inc. v. Doe*, No. 5:08-CV-115-FL, 2008 WL 5111886, at *4 (E.D.N.C. Dec. 4, 2008) (finding that the feasibility of a suggested alternative method of determining defendants' identities by hiring a private investigator to observe downloading "is questionable at best"); *Warner Bros. Records, Inc. v. Doe*, No. 5:08-CV-116-FL, 2008 WL 5111883, at *4 (E.D.N.C. Dec 4, 2008) (same).

### 4. Discovery Is Needed to Advance the Asserted Claims

Plaintiff will not be able to proceed with this case without the requested discovery. Plaintiff's statutorily protected property rights are at issue in this suit and, therefore, the equities should weigh heavily in favor of preserving Plaintiff's rights. Since identifying the Defendant by name is necessary for Plaintiff to advance the asserted claims, Plaintiff has established the fourth good cause factor. *Sony*, 326 F.Supp. at 566; *BMG Music v. Doe # 4*, No. 1:08-CV-135, 2009 WL 2244108, at *3 (M.D.N.C. July 24, 2009) (finding under nearly identical circumstances that "[p]laintiffs have shown that the subpoenaed information—Doe # 4's identity—is centrally needed to advance Plaintiffs' copyright infringement claim").

### 5. Plaintiff's Interest in Knowing Defendant's True Identities Outweighs Defendant's Interests in Remaining Anonymous

Plaintiff has a strong legitimate interest in protecting its copyright. Defendants are copyright infringers with no legitimate expectation of privacy in the subscriber information provided to the ISP, much less in distributing the copyrighted work in question without permission. *See Guest v. Leis,* 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); *BMG Music v. Doe # 4*, No. 1:08-CV-135, 2009 WL 2244108, at *3 (M.D.N.C. July 24, 2009) (finding under nearly identical circumstances that "[p]laintiffs have shown that Defendant Doe # 4 has a minimal expectation of privacy downloading and distributing copyrighted songs without permission"); *Interscope Records v. Does 1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); *Sony*, 326 F.Supp.2d at 566 ("defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission");

*Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8-9 (D.D.C. Apr. 28, 2008) (finding that the "speech" at issue was that doe defendant's alleged infringement of copyrights and that "courts have routinely held that a defendant's First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights"); *Sony Music Entm't, Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) ("defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission"); *Arista Records, LLC v. Doe No. 1*, 254 F.R.D. 480, 481 (E.D.N.C. 2008); *U.S. v. Hambrick*, 55 F. Supp. 2d 504, 508 (W.D. Va. 1999), aff'd, 225 F.3d 656 (4th Cir. 2000).

Downloading a mainstream motion picture is no different than downloading a song. Being named as a defendant in this action does not expose an individual to embarrassment. It is not blackmail. In fact, copying music and mainstream movies is so pervasive that the public widely accepts it without question. And, this is the exact problem this lawsuit addresses. That copying a mainstream movie is no different than downloading a song, it raises no privacy concerns.

### C. Irreparable Harm Establishes Good Cause to Grant the Motion

Good cause exists here for the additional reason that a claim for copyright infringement presumes irreparable harm to the copyright owner. This is especially true in this matter since the copying results in financial losses such as lost ticket sales and eroding rentals and purchases. *See UMG Recordings, Inc. v. Doe*, 2008 WL 4104214 (N.D. Cal. 2008) (finding good cause for expedited discovery exists in Internet infringement cases, where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference); Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 14.06[A], at 14-03 (2003); *Elvis Presley Enter., Inc. v. Passport Video*, 349 F.3d 622, 631 (9th Cir. 2003).

The first and necessary step that Plaintiff must take to stop the infringement of its valuable copyright is to identify the Doe Defendants who are copying and distributing the MOVIE. This lawsuit cannot proceed without the limited discovery Plaintiff seeks because the ISPs are the only entities that can identify the otherwise anonymous Defendants. Courts regularly permit early discovery where such discovery will "substantially contribute to moving th[e] case forward." *Semitool*, 208 F.R.D. at 277.

**III. Conclusion**

For the foregoing reasons, Plaintiff respectfully submits that the Court should grant the pending Motion for Leave to Take Discovery Prior to the Rule 26 Conference. Plaintiff requests permission to serve a Rule 45 subpoena on the ISPs it has identified as of this date, and those it identifies in the future, so that the ISPs can divulge the true name and address of each Doe Defendant that Plaintiff has identified to date, and those it identifies in the future during the course of this litigation and an order that the ISPs shall comply with the subpoenas. Plaintiff will only use this information to prosecute its claims. Without this information, Plaintiff cannot pursue its lawsuit to protect its MOVIE from past and ongoing, repeated infringement.

DATED:  April 10, 2014               Respectfully submitted,

                                              Takiguchi & Vogt, LLP
                                              1415 West 22nd Street, Tower Floor
                                              Oakbrook, IL 60523
                                              (630) 974-5707
                                              Attorneys for Plaintiff

                           By:   /s/ Keith A. Vogt (IL Bar 6207971)
                                         KVogt@takiguchiandvogt.com